**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

UNITED STATES OF AMERICA

v.                                       No. 4:05CR00132 JLH

EDWARD CHARLES NICHOLSON

**OPINION AND ORDER**

In its December 28, 2005, criminal judgment for defendant Edward Nicholson, the Court

ordered Nicholson to pay $194,184.27 in restitution to the victim Bank of America. The Court stated

that it would allow that amount to be offset by the proceeds from the sale of Nicholson's

Jacksonville home, after deducting expenses incurred from the maintenance and sale of the house.

The Court required Bank of America to give notice of the amount still owed after the sale of the

house within 90 days of the entry of the judgment. On March 24, 2006, Bank of America submitted

a letter to the Court. That letter stated that the proceeds for the sale of the house, after deducting

expenses, was $172,028.56. The letter also stated that Bank of America was still owed $77,400.43

by Nicholson. For the following reasons, Nicholson's restitution order is amended to reflect the

$22,155.71[1] in restitution Nicholson still owes Bank of America.

**I.**

Nicholson was indicted on one count of bank fraud and another count of money laundering

on May 4, 2005. The indictment states that $194,184.27 was the amount involved in the bank fraud

and money laundering. On June 28, 2005, Nicholson pled guilty to one count of money laundering

in violation of 18 U.S.C. § 1957 in connection with a bank fraud scheme perpetrated against Bank

---

[1] The difference between the $194,184.27 of restitution and the $172,028.56 proceeds of
the sale of the Jacksonville home is $22,155.71.

of America.  Nicholson's plea agreement contained provisions regarding restitution.  The agreement

stated that "defendant acknowledges that restitution is mandatory pursuant to 18 U.S.C. § 3663A."

The plea agreement further stated that "defendant agrees to the entry of the order of restitution for

the amount of $194,184.27, minus the amount received by the victim after selling the house at

number 12 Woodland Drive, Jacksonville, Arkansas, and after deducting all expenses incurred from

the maintenance and sale of the house."

On December 27, 2005, the Court held a sentencing hearing for Nicholson.  At that hearing,

Judy Henry appeared on behalf of the victim Bank of America.  The Court questioned her about the

payoff value of Nicholson's Jacksonville house.  She stated:

> JH:  [W]e had a broad misrepresentation overdraft lawsuit that was filed in state court, and it ended up in a trial October 25th of this year, and we had a contested hearing, and it ended up another judgment lien creditor that appeared having a lien on the property and contesting Bank of America. Judge Humphries in state court entered a judgment in favor of Bank of America and quieted title on the real estate.  The judgment itself was $229,204.20, plus prejudgment interest from November 13 of 2004 until October 25 of 2005, plus attorney's fees of $19,678.50, and costs of $646.39. . . . There's post judgment interest accruing on that amount, Your Honor.

Bank of America offered the state-court judgment as evidence at the hearing.  Later in the hearing,

the Court made its findings:

> Court:  Restitution is mandatory pursuant to the Antiterrorism and Effective Death Penalty Act of 1996.  The plea agreement stipulated that the restitution was owed in the amount of $194,184.27. . . . What we'll do is enter an order that pursuant to the plea agreement that the restitution would be in the amount of $194,184.27, and authorize the probation office to record the amount that's owed to Bank of America after Bank of America closes on the sale.  And if you can report that amount to the probation office, then the probation office will reflect a credit down to the net amount that's owed to Bank of America, after adding principal and interest, costs and attorney's fees, in reducing—in subtracting the proceeds from the sale.

> . . . .

Court: $194,184.27.  That was the amount of the debt originally.  Bank of America will end up with a deficiency, and to make it simple, Ms. Henry, on behalf of the Bank of America, will file a notice of what that deficiency is, after the sale of the house closes and send a copy to Mr. Adams and Mr. Harris. You'll get a copy.  And then that deficiency will be the amount that he actually owes . . .  Does that make sense?

The Court determined on the entry of judgment that Nicholson did not have the ability to pay interest and waived the requirement to pay interest on the $194,184.27.

On March 24, 2006, Bank of America submitted a letter to the court regarding the sale of Nicholson's Jacksonville house on January 2, 2006.  According to that letter, the gross sale proceeds totaled $176,612.52; the expenses incurred with the sale of the home were in the amount of $4,583.96; and the net sale proceeds were $172,028.56.  The letter also stated that the principal amount of the judgment in favor of Bank of America was $229,104.10, plus fees of $19,678.50, costs of $646.39, and interest since November 13, 2004, at the highest rate allowed by law.  Bank of America stated that the deficiency balance was $77,400.43 plus both interest on the entire debt from November 13, 2004, to the date of sale and interest on the deficiency from the sale date until paid in full.

## II.

Two statutes govern criminal restitution in federal court: The Victim Witness Protection Act ("VWPA"), passed in 1982, and the Mandatory Victims Restitution Act ("MVRA"), enacted by Congress in 1996.  The purposes of both acts are, to the extent possible, to make victims whole, to fully compensate victims for their losses, and to restore victims to their original state of well-being. *United States v. Simmonds, III*, 235 F.3d 826, 831 (3d Cir. 2000).  While the VWPA places restitution at the discretion of the district judge, *see* 18 U.S.C. § 3663(b), the MVRA mandates that defendants who are convicted of or plead guilty to certain crimes pay restitution to their victims.  *See*

18 U.S.C. § 3663A(a)(1).  Section 3663A(c) states that the MVRA applies: any "crime of violence";

"offense against property under [Title 18], including any offense committed by fraud or deceit"; or

offense "relating to tampering with consumer products."

      The MVRA provides that in the case of an offense "resulting in damage to or loss or

destruction of property."  The Court must require the defendant to return the property or, if return

is impossible, pay an amount equal to "the greater of the value of the property on the date of the

damage, loss or destruction; or the value of the property on the date of sentencing, less the value (as

of the date the property is returned) of any part of the property that is returned."  *Id*. § 3663A(b)(1).[2]

The amount of restitution pursuant to this statute is $22,155.71, or the $172,028.50 net proceeds

from the sale of the house subtracted from the $194,184.27 total loss.

## CONCLUSION

      For the foregoing reasons, Nicholson's sentencing judgment is AMENDED.  Edward Charles

Nicholson owes $22,155.71 in restitution to Bank of America.  Docket #55.

      IT IS SO ORDERED this 12th day of April, 2006.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

    [2] Section 3663A(b)(2) and (3) govern cases resulting in bodily injury.  Section 3663A(b)(1) is the only provision of the MVRA that could apply here and direct the court as to how to determine the amount of restitution.  *See also United States v. Polichemi*, 219 F.3d 698, 714 (7th Cir. 2000) (money laundering is an "offense against property").